# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CASE NO. 1:16CR379 |
| Plaintiff, | : | |
| | : | JUDGE CHRISTOPHER A. BOYKO |
| vs. | : | |
| | : | |
| JESSE M. SMITH, | : | **DEFENDANT'S MOTION FOR** |
| | : | **DISCOVERY VIOLATION** |
| Defendant. | : | **SANCTIONS** |

Defendant, through counsel, respectfully moves this Honorable Court to sanction the government for violating Fed. R. Crim. Proc. 16(b)(1)(G) by failing to provide a written summary of expert testimony by either declaring a mistrial or striking the testimony of the government expert. A memorandum is attached hereto and made a part hereof.

Respectfully submitted,

STEPHEN C. NEWMAN
Federal Public Defender
Ohio Bar: 0051928

*/s/Darin Thompson*_____
DARIN THOMPSON (#0067093)
Assistant Federal Public Defender
1660 West Second Street, Suite 750
Cleveland, Ohio 44113
(216) 522-4856 Fax: (216) 522-4321
e-mail address: darin_thompson@fd.org.

1

**MEMORANDUM**

**I.     FACTS**

The government did not provide a written expert report or summary of the testimony of Task Force Officer Robert Moledor prior to trial. Instead, the defense was provided a verbal summary after trial had commenced. The government also provided the documents on which TFO Moledor based his testimony. These documents, referred to as "call detail records," were produced by Verizon pursuant to subpoena. These records were also produced to defense counsel after trial had commenced. These facts were placed on the record at sidebar prior to TFO Moledor's testimony.

The "call detail records" for Mr. Smith's cell phone were marked as Government's Exhibit 66. See attached Exhibit A. The records included some information about calls made, and included a column marked "element." The verbal summary provided by the government prior to TFO Moledor's testimony was that the "element" listed in the first column of the spreadsheet referred to the mobile switching station. The government's verbal summary was that every cell phone call is routed through mobile switching stations. If the mobile switching station was outside the state of Ohio, this would be evidence that the call constituted interstate communications. The government verbally indicated that Mr. TFO Moledor would testify that the 9/19 call at issue had Bridgeville2 (which is in Pennsylvania) listed as the mobile switching station, therefore it must have been routed through Bridgeville2, and therefore traveled interstate. The government further indicated that the 9/23 call at issue had St. Clairsville (which is in Ohio) as a mobile switching station, and therefore was routed through St. Clairsville and did not travel interstate.

Following this verbal summary, undersigned counsel performed some internet research to attempt to confirm the soundness of the above referenced testimony regarding how cell phone calls are routed. Although the internet research quickly led to highly technical discussions of routing of cellphone calls, it appeared consistent with the above discussion. Based on this research, undersigned counsel did not either seek to exclude the expert testimony of TFO Moledor based on the discovery violation or request a continuance to allow for time to contact a cell phone routing expert to evaluate the validity of the expert testimony being offered.

The witness testified as expected with regard to the 9/19 call. However, with regard to the 9/23 call, he testified that it too was routed through Bridgeville2, because Bridgeville2 controlled St. Clairsville. The source of this claim was not the call detail records. It was simply asserted by the witness as fact, presumably based upon his specialized knowledge of cell phones routing. The following is the relevant testimony:

> THE COURT: Where is the switch center for St. Clairesville?
>
> THE WITNESS: It would be in St. Clairesville, Ohio. It is a subswitch of the Pittsburgh switch.
>
> THE COURT: Does it have to go to Pittsburgh before it goes back to Ohio?
>
> THE WITNESS: Yes. It is subordinate to Pittsburgh. St. Clairesville switch is subordinate to the major Pittsburgh switch.
>
> THE COURT: Okay. Does everything have to go to the major Pittsburgh switch before it comes back to anywhere?
>
> THE WITNESS: Yes. All of the bay stations under Pittsburgh go to the subunits and back and forth. So I am here in Ohio, I make a call in the St. Clairesville market on a St. Clairesville tower. It goes back to a computer in St. Clairesville. Then it gets relayed to Pittsburgh, and then it goes back out to the destination of the call.

> THE COURT: Got it.
>
> BY MR. BEESON:
>
> Q. Let me, I want to make sure we are clear on this because it is a sort of slippery point, but I want to talk about the actual call itself, the voice part. The voice part, based on what you can see here, did the voice part ever leave Ohio?
>
> A. I know that that portion of the call left Ohio, not because it is published in the record, but because I know that the St. Clairesville switch is operated by the Pittsburgh MSC, and so, yes, it has to go through the main switch on its way to its destination.
>
> Q. I just want to be super clear on this point. So --
>
> THE COURT: Well, what's the question? What do you need to be super clear on?
>
> BY MR. BEESON:
>
> Q. Whether this call ever crossed state lines.
>
> A. Yes. This call would have gone from the phone to the tower, to the St. Clairesville switch, from the St. Clairesville switch to Pittsburgh MSC, and then from Pittsburgh MSC onto its destination.

Trial Transcript at 21-22, attached as Exhibit B.

Undersigned counsel immediately advised this Court of the variance from the verbal summary of expert testimony that had been provided by the government. Counsel for the government confirmed this variance. As the result of this variance from the summary, undersigned counsel was unable to immediately proceed into cross-examination of TFO Moledor because consultation with an expert was necessary to understand the testimony itself. This Court allowed cross examination to be deferred until Monday to provide counsel with additional time in which to locate and consult with an expert.

Undersigned counsel was able to locate only one cell phone routing expert for consultation due to the short time period holiday weekend: Ben Levitan. See Affidavit, attached

4

as Exhibit C. Unfortunately, he is unavailable to testify over the next two weeks due to other court appearances. In summary, his opinion is that not only is the government expert wrong that the 9/23 call was necessarily routed through Bridgeville2 because Bridgeville2 controls the St. Clairesville, he is wrong that the 9/19 call itself was necessarily outed through the St. Clairesville switching station. Cell phones send different signals when a voice call is made. First, the cell phone contacts the mobile switching center, which links to the billing center, checks the account information, starts billing, etc. Second, the mobile switching center locates the phone the user is attempting to call. Depending on the type of network used and the companies involve, the call may or may not be routed through the switching station. Depending on those factors, a circuit is created between the two phones for voice communication. This circuit of voice communication is not necessarily routed through the switching station.

## II. LAW AND ARGUMENT

The government's discovery obligations regarding expert witnesses are set forth in Criminal Rule 16, as follows:

> **(G) Expert witnesses.**--At the defendant's request, the government must give to the defendant a written summary of any testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial. If the government requests discovery under subdivision (b)(1)(C)(ii) and the defendant complies, the government must, at the defendant's request, give to the defendant a written summary of testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence as evidence at trial on the issue of the defendant's mental condition. The summary provided under this subparagraph must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications.
>
> Fed. R. Crim. P. 16(a)(1)(G). Where the government fails to comply with these obligations, the same Rule provides this Court with broad authority to address the failure, as follows:
>
> **(2) Failure to Comply.** If a party fails to comply with this rule, the court may:

> **(A)** order that party to permit the discovery or inspection; specify its time, place, and manner; and prescribe other just terms and conditions;
>
> **(B)** grant a continuance;
>
> **(C)** prohibit that party from introducing the undisclosed evidence; or
>
> **(D)** enter any other order that is just under the circumstances

Fed. R. Crim. P. 16(d)(2).

In the instant case, the Court is presented with a clear violation of the requirement that the government provide a written summary, denying defense counsel the ability to locate, retain and consult with an expert to understand his proposed expert testimony regarding cell phone routing, meaningfully challenge that opinion through cross examination, and potentially present a defense expert to provide a contrary expert opinion. Moreover, the government's verbal summary of the proposed expert testimony of TFO Moledor was incorrect in two ways. First, it was incorrect as to the substance, regarding whether witness would testify the 9/23 call was routed interstate. More fundamentally, it was incorrect as to the basis of that opinion. TFO Moledor's testimony that any cell calls routed through the St. Clairsville switching station would also have been necessarily routed through the Bridgeville2 station was unexpected by even the government. This opinion is not supported by the materials provide. Most problematic for the defense, this opinion is directly contradicted by the opinion of the defense cell call routing expert.

The question of what sanction is most appropriate is a difficult one due to the fact that trial has commenced. Two possible options appear most reasonable. One option is the government could be prohibited from introducing the undisclosed evidence. In this case, because the witness has already testified, the jury could simply be instructed to disregard the testimony. Weighing in favor of this solution is that the trial could continue. A second option is that a

mistrial could be declared. Although this would increase cost and burden on the Court due to the potential for a second trial, it would allow both parties to litigate the issue fairly. Both of these options would prevent prejudice to the defense from the failure to comply with the discovery requirements related to the expert testimony of TFO Moledor. Only a failure to impose one of these sanctions would prejudice Mr. Smith, by denying him the ability to meaning challenge the government's expert witness. If this case simply proceeds forward, undersigned counsel will not be able to effectively cross examine the government's expert without the assistance of a defense cell call routing expert at trial, and Mr. Smith will be denied the ability to present exculpatory expert testimony directly contrary to that of the government's expert.

        Respectfully submitted,

        STEPHEN C. NEWMAN
        Federal Public Defender
        Ohio Bar: 0051928

        */s/Darin Thompson*_____
        DARIN THOMPSON (#0067093)
        Assistant Federal Public Defender
        1660 West Second Street, Suite 750
        Cleveland, Ohio 44113
        (216) 522-4856 Fax: (216) 522-4321
        e-mail address: darin_thompson@fd.org.

## CERTIFICATE OF SERVICE

I hereby certify that on April 15, 2017, a copy of the foregoing Motion was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's system.

*/s/Darin Thompson*_____
DARIN THOMPSON (#0067093)
Assistant Federal Public Defende